IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | | |
|---|---|---|
| William Scott Norwood, | ) | |
| | ) | |
| Plaintiff, | ) | **VERIFIED COMPLAINT** |
| | ) | |
| v. | ) | **(JURY-TRIAL DEMANDED)** |
| | ) | |
| Dip Wizard, LLC, James Bronson, and | ) | |
| Dipstick Coatings, LLC | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The plaintiff, William Scott Norwood, complaining of the defendants, Dip Wizard, LLC, James Bronson and Dipstick Coatings, LLC, would respectfully allege and show unto the Court as follows:

1. William Scott Norwood is an individual residing in Anderson County, South Carolina.

2. The defendant James Bronson is an individual residing in Anderson County, South Carolina.

3. The defendant Dip Wizard, LLC is a limited liability company organized and existing under the laws of the State of South Carolina and doing business in Anderson County, South Carolina.

4. Upon information and belief, the defendant, Dipstick Coatings, LLC, is a limited liability company organized and existing under the laws of the State of South Carolina and doing business in Anderson County, South Carolina.

5. This action is brought in federal court under the federal Copyright Act of 1976, as amended, 17 U.S.C.A. § 101, *et. seq*.

6. Jurisdiction and venue are proper in this Court pursuant to 28 U.S.C.A. §§ 1338(a) and 1339(b).

**GENERAL ALLEGATIONS**

7. In 2011, Norwood created a business called Dip Wizard, LLC (the "Company"). Norwood developed the business idea, developed the products sold by the Company, and provided all of the intellectual property for the Company, including the designs, drawings, and artistic creations used in the products sold, and developed the Company's name and logo. Norwood spent considerable time and financial resources to develop the products that the Company would eventually sell. Norwood invested his own capital to start the business, acquire materials to develop products, acquire a website, develop and acquire marketing materials, and to acquire and develop all other tools necessary to begin selling products as Dip Wizard. Norwood devoted substantial capital and time to the development and start-up of the Company.

8. In 2012, at the point Norwood was about to take the Company to market, Norwood approached James Bronson, about joining him as an equal partner in the company to run the day-to-day operations of the Company so Norwood could focus on the creative and artistic side of the business and because Norwood was also operating two additional business at the time. Bronson knew of Norwood's additional businesses and it was disclosed to Bronson that Norwood's additional businesses was a reason Bronson was being invited into the Company.

9. Bronson accepted and began to take over the day-to-day management functions of the Company. Norwood continued to work to develop and market the Company's products.

10. One of Norwood's other businesses, Carolina Camo Dip, LLC ("Carolina Camo") provides water transfer decorating services of firearms and other consumer products. Carolina Camo was approached with an opportunity to decorate products manufactured by a company called Denver Global. Norwood secured a contract with Denver Global on behalf of Carolina Camo. Norwood approached Bronson about securing credit lines for capital and operating expenses and proposed splitting profits from the sales to Denver Global in exchange for assistance in obtaining start-up capital. Bronson started a separate company Dip Wizard Services, LLC ("DWS") to receive orders from Denver Global. DWS and Denver Global agreed that when DWS received its first purchase order from Denver Global, DWS would be given a $50,000.00 advance. Norwood and Bronson also agreed that Bronson would handle the financials for DWS and Bronson received the $50,000.00 advance from Denver Global. Bronson and Norwood further agreed that Norwood would run the day-to-day operations of DWS at Carolina Camo's facilities. Bronson continued to work at Dip Wizard.

11. Beginning with Norwood's work for DWS, Bronson began to systematically exclude Norwood from the Company. Bronson took a number of actions on behalf of the Company that were not discussed with or approved by Norwood. Although Norwood held fifty percent (50%) of the shares in the Company, Bronson failed to provide him with basic accounting and financial documents, consult with him about major decisions in the direction of the business, failed to consult with him about the

hiring of additional employees, and failed to disclose to him amounts Bronson was taking from the Company. Bronson also began taking distributions from the Company without issuing an equal distribution to Norwood.

12.     In April 2013, Bronson, against the wishes and expressed disagreement of Norwood, hired his son, Danny Bronson, to begin working at the Company. Once Danny began working at the Company, Norwood's exclusion from the Company became complete. Norwood was stripped of access to key Company accounts, was not provided with basic information about the business, was not consulted about the pay Danny was receiving, was not kept apprised of amounts flowing out of the operating account to employees or Bronson, was not provided with basic tax documents, and was excluded from any control or management of the Company. When Norwood would make demands to be provided with information, management control, to be consulted on Company decisions, or to receive distributions equal to those being taken by Bronson, he was ignored.

13.     In Fall 2013, Norwood learned that Bronson began writing himself a weekly check from the Company despite not discussing payments to himself with Norwood. Bronson thus failed to seek approval for his weekly payments from disinterested members. Bronson also failed to pay Norwood an equal distribution or any distribution at all despite his taking distributions from the Company.

14.     Norwood has also learned that Bronson's son Danny Bronson was running a separate, competing business, Pack Arms, LLC, out of the Company's facilities and using the Company's materials and products. Pack Arms is not paying for the use of the Company's space, materials, products, or marketing materials.

15. Norwood has also learned that Bronson hired Danny's girlfriend without Norwood's approval.

16. Norwood has also learned that Bronson has begun providing health insurance for himself and his son without Norwood's knowledge or approval and without providing similar benefits to Norwood.

17. Norwood has also learned that Bronson is permitting his son to run a gunsmith business at the Company's facilities and using the Company's facilities and assets without any benefit to the Company.

18. Norwood has further learned that friends of Bronson and Danny are receiving the Company's products for free or at extremely reduced costs and selling these products on the Internet under different names with no benefit to the Company.

19. Norwood has also learned that Bronson has paid bonuses and given loans and other sums to himself, his son, and other "employees" without Norwood's knowledge or approval.

20. Norwood has also learned that Bronson is permitting the theft of the Company's trade secrets, intellectual property, copyright, and other sensitive and protected information developed by Norwood exclusively for the Company's use.

21. Bronson also failed to repay the $50,000 advance DWS received from Denver Global, repaying only $10,000.00 before spending the rest on unauthorized and unknown expenses. Norwood has since repaid the $40,000.00 debt owed to Denver Global with no help from Bronson, the Company or DWS.

22. Recently, Norwood has learned that Bronson has set up a competing company, Dipstick Coatings, LLC ("Coatings"), and begun directing all of the

5

Company's business to Coatings. Bronson is using the Company's assets and property for Coatings, including a copyrighted logo owned by Norwood and designed exclusively for the Company's use. Bronson and Coatings also deliberately corrupted the Company's website in order to make in unusable.

## FOR A FIRST CAUSE OF ACTION
### (Breach of Contract as to Bronson and Dip Wizard)

23. Norwood repeats and realleges the allgations contained above as if fully restated herein.

24. All of the above-referenced actions are in breach of the Operating Agreement signed between Bronson and Norwood dated March 2014 and are contrary to South Carolina law, S.C. Code § 33-44-101, *et. seq.*

25. As a direct and proximate result of Bronson's breach of contract, Norwood has suffered actual, direct, consequential, special, and other damages in an amount to be determined by the trier of fact.

## FOR A SECOND CAUSE OF ACTION
### (Judicial Accounting and Dissolution as to Bronson and Dip Wizard)

26. Norwood repeats and realleges the allegations contained in the previous paragraphs as if fully restated herein.

27. Norwood is a member of the Company and has been and has been deprived of the rights and benefits of his membership by Bronson. S.C. Code § 33-44-801 provides that a member may apply for a judicial decree that a company's business be dissolved and wound up upon a showing that (i) another member has engaged in conduct relating to the company's business that makes it not reasonably practicable to carry on the company's business with that member; (ii) it is not reasonably practicable to carry on the

6

company's business in conformity with the articles of organization in the Operating Agreement; (iii) or the manager or members in control of the company have acted or are acting or will act in a manner that is unlawful, oppressive, fraudulent, or unfairly prejudicial to the petitioning member.

28. Bronson has acted in a manner that makes it not reasonably practicable to carry on the company's business with Bronson as a member, or in conformity with the articles of organization in the Operating Agreement, and has acted in a manner that is unlawful, oppressive, fraudulent, and unfairly prejudicial to Norwood in the manner described above and as to be determined. Therefore, Norwood seeks judicial dissolution the Company, a judicial accounting, and an order from this Court that Bronson or the Company pay Norwood the fair market value of his interest in the Company.

**FOR A THIRD CAUSE OF ACTION**
(<u>Accounting as to Bronson and Dip Wizard</u>)

29. Norwood repeats and realleges the allegations containing to the previous paragraphs as if fully restated herein.

30. Bronson has improperly deprived Norwood of his interest in the Company and has failed to compensate Norwood or provide him with distributions equal to those provided to Bronson.

31. Norwood is entitled to a judgment in his favor compelling the Company and Bronson to account for all distributions and other amounts owed to Norwood pursuant to the Operating Agreement and South Carolina law and for an order compelling the Company and Bronson to pay all amounts owed to Norwood.

## FOR A FOURTH CAUSE OF ACTION
### (Conversion as to Bronson, Dip Wizard and Coatings)

32. Norwood repeats and realleges the allegations contained in the previous paragraphs as if fully restated herein.

33. Bronson has unlawfully deprived and converted Norwood's interest in the Company, Norwood's distributions and other amounts owed to Norwood pursuant to the Operating Agreement and South Carolina law, along with other rights and interests of Norwood in the Company, all of which constitutes the property of Norwood.

34. Bronson and Coatings have converted the property of Norwood and the Company, using the Company's property, including Norwood's interest in the Company's property, for the operation of a competing business.

35. Bronson and Coatings knew or should have known of Norwood's interests in the property and have converted Norwood's interests in the property to their own use.

36. As a direct and proximate result of Bronson and Coatings' conversion, Norwood has suffered actual, consequential, and incidental damages including, but not limited to, the value of all distributions and other sums owed to Norwood pursuant to the Operating Agreement and South Carolina law, along with the value of all other property converted by Bronson and Coatings. Norwood is also entitled to punitive damages in an amount to be determined by the trier of fact.

## FOR A FIFTH CAUSE OF ACTION
### (Breach of the covenant of good faith and fair dealing as to Bronson)

37. Norwood repeats and realleges the allegations contained in the previous paragraphs as if fully restated herein.

8

38. South Carolina law and the Operating Agreement between Norwood and Bronson contained the implied covenant of good faith and fair dealing that Bronson would do those things reasonably necessary to comply with the terms of the Operating Agreement and would not refuse to comply with the Operating Agreement for reasons not contemplated by the Operating Agreement.

39. By refusing to follow the provisions of the Operating Agreement or applicable South Carolina law, and by taking the actions described above, Bronson has breached his covenant of good faith and fair dealing.

40. As a direct and proximate result of Bronson's breach, Norwood has suffered damages including, but not limited to, actual, consequential, and special damages associated with the breach. Norwood is entitled to damages and punitive damages in an amount to be determined by a trier of fact.

### FOR A SIXTH CAUSE OF ACTION
### (Breach of fiduciary duties as to Bronson)

41. Norwood repeats and realleges the allegations contained in the previous paragraphs as if fully restated herein.

42. Members of a limited liability company such are fiduciaries each to the other in their relationship is one of mutual trust and confidence imposing upon them requirements of loyalty, good faith, and fair dealing.

43. One of the paramount duties of members among themselves is their fiduciary duty to exercise good faith and maintain the highest integrity when dealing with other members.

44. As members of the Company, a special and fiduciary relationship existed between Bronson and Norwood, and as such Norwood placed trust and confidence in the integrity and fidelity in Bronson.

45. Bronson owed Norwood a fiduciary duty to act in good faith and with due regard to Norwood's interest in the Company.

46. Bronson owed Norwood a fiduciary duty to disclose all relevant facts and refrain from taking advantage of Norwood by misrepresentation or concealment of facts.

47. As a member, Bronson owed Norwood the highest degree of good faith in their dealings with reference to any matter concerning the business of the Company. As a member, Bronson owed Norwood the duty to account to him and the company for any benefit and hold as Trustee for him any profits derived by the company from any transaction connected with the formation, conduct, or liquidation of the company or by any use of its property. Bronson also owed the duty not to compete with the Company or to take an opportunity belonging to the Company.

48. Bronson violated his fiduciary duties to Norwood as co-member of the Company, in part, by refusing to follow the provisions of the Operating Agreement or South Carolina law that apply to the participation of Norwood in the operation and management of the company, provide for the disclosure of material facts and information about the Company, ignoring Norwood's votes on matters concerning the Company's operations, failing to provide Norwood with distributions, by making misrepresentations concerning the operations of the Company, by taking actions contrary to the expressed wishes of Norwood, by disclosing the Company's trade secrets and other confidential information to third parties, by permitting his son to operate competing and/or unrelated

businesses using the Company's property and assets without benefit to the Company, by providing benefits to himself as an interested member without the consent of Norwood, by interfering with Norwood's access to company records and accounts, by failing to provide Norwood with necessary tax documents, by setting up a business that competes with the Company using the Company's property and assets to do so, along with other actions in breach of his fiduciary duties to the Company.

49. As a direct and proximate result of Bronson's breach of his fiduciary duties, Norwood has suffered damages, including but not limited to, actual, consequential, and incidental damages associated with the breach. Norwood is therefore entitled to recover damages for Bronson's breach in an amount to be determined by the trier of fact.

50. Bronson's breach of his fiduciary duties owed to Norwood were willful and wanton and in reckless disregard of Norwood's rights in the Company. As a direct and proximate result of Bronson's breach of his fiduciary duties, Norwood has suffered actual damages and Norwood is therefore entitled to an award of punitive damages against Bronson.

**FOR AN SEVENTH CAUSE OF ACTION**
**(Equitable discouragement as to Bronson, Dip Wizard and Coatings)**

51. Norwood repeats and realleges the allegations contained in the previous paragraphs as if fully restated herein.

52. Upon information and belief, by taking control of certain assets, contractual relationships, intellectual property, and finances of the Company, Bronson and Coatings have been able to misappropriate business opportunities and assets to

11

themselves to the exclusion of Norwood's rights and interests in the Company. The misappropriation of the Company's business opportunities, property, and interests has enabled Bronson and Coatings to wrongfully gain profits to Norwood's detriment.

53. Upon information and belief, the misappropriation of the Company's business opportunities, distributional interest, property, trade secrets, and other interests owned by Norwood, was done by fraudulent, illegal, and inequitable means. Norwood is entitled to an order of this Court requiring Bronson to disgorge the profits and revenues received by him from the Company's business operations.

### FOR AN EIGHTH CAUSE OF ACTION
### (Unjust Enrichment/ Breach of
### Contract as to Bronson, Dip Wizard and Coatings)

54. Norwood repeats and realleges the allegations contained in the previous paragraphs consistent with this cause of action as if fully restated herein.

55. In exchange for a loan from Denver Global in the amount of $50,000.00 to DWS, Bronson promised that he would use the $50,000.00 for DWS's business and personally guaranteed that he would repay the loan.

56. Bronson failed and refused to pay any part of the $40,000.00 balance of the $50,000.00 loaned by Denver Global to DWS.

57. As a result, Norwood was forced to repay the $40,000.00 owed to Denver Global by DWS, despite Bronson's promise to do so.

58. By paying off a loan owed by Bronson, Bronson was unjustly enriched.

59. Additionally, Norwood supplied intellectual property, products and other assets for the Company.  Bronson, the Company and Coatings, have taken the property

12

supplied Norwood under circumstances in which it would be unjust for them to retain the property without paying value to Norwood.

60. As a direct and proximate result of the defendants' unjust enrichment, Norwood has been damaged in an amount to be determined by the trier of fact.

### FOR A NINTH CAUSE OF ACTION
### (Constructive Trust as to Bronson, Dip Wizard and Coatings)

61. Norwood repeats and realleges the allegations contained in the previous paragraphs as if repeated herein.

62. As a result of the defendants illegally taking the valuable property of the Company and Norwood, including intellectual and other property, a constructive trust has been created over which the defendants are trustees and has the duties of a trustee to hold and manage the property for the benefit of Norwood.

63. Norwood asks that the defendants, as Trustees of the constructive trust, be ordered to retain all proceeds from the Company until such time as it be turned over to Norwood as true owner of the property upon a full and proper accounting, and that as such all marketable title and right be returned to Norwood under the trust and the trust be dissolved following distribution of its asset to Norwood.

### FOR A TENTH CAUSE OF ACTION
### (Breach of Contract Accompanied by a Fraudulent Act as to Bronson)

64. Norwood repeats and reiterates the allegations contained in the previous paragraphs consistent with this cause of action as if fully restated herein.

65. At all times relevant to these allegations, a contract existed between Bronson and Norwood.

13

66. Bronson breached that contract with fraudulent intent and by fraudulent acts.

67. As a result of Bronson's fraudulent breach of contract, Norwood is entitled to damages to be determined by a trier of fact, along with punitive damages.

## FOR AN ELEVENTH CAUSE OF ACTION
**(Copyright Infringement as to Bronson and Coatings)**

68. Norwood repeats and realleges the allegations contained in the previous paragraphs consistent with this cause of action as if fully restated herein.

69. This action is brought under the federal Copyright Act of 1976 as amended, 17 U.S.C.A. § 101, *et. seq*.

70. Norwood created a logo for use in the Company's business the ("Work"). On August 18, 2014, Norwood properly registered and deposited the Work with the United States Copyright Office. The Copyright Office accepted such submission and issued Norwood a certificate of copyright registration, a copy of which is attached to this complaint as **Exhibit A**.

71. Norwood allowed the Company to use the Work exclusively for the Company's business.

72. Upon information and belief, Bronson and Coatings have wrongfully reproduced and are using the Work in a manner not authorized or approved by Norwood. Bronson and Coatings have ignored and continue to ignore Norwood's rights in the Work.

73. The unauthorized and infringing use of the Work will, unless enjoined cause irreparable harm and damage to Norwood.

74. Norwood is entitled to a preliminary and permanent injunction enjoining further use of the Work by Coatings or Bronson. Norwood is also entitled to damages in an amount to be determined by the trier of fact, punitive damages, and attorneys' fees.

## FOR A TWELFTH CAUSE OF ACTION
### (Infringement on the Right of Publicity as to Bronson and Coatings)

75. Norwood repeats and realleges the allegations contained in the previous paragraphs consistent with this cause of action as if fully restated herein.

76. Norwood has a right to the protection of his name, likeness and identity and a right to be free from the misappropriation of his name, likeness and identity.

77. Norwood appeared in several videos and other advertising materials advertising the services and products of Dip Wizard, LLC.

78. Bronson and Coatings have intentionally and without Norwood's consent, used Norwood's name, likeness and identity for their own benefit to sell and market the products of Coatings.

79. As a direct and proximate result of Bronson and Coatings misappropriation of Norwood's name, likeness, and identity, Norwood has suffered and will continue to suffer damages in an amount to be determined by the trier of fact. Norwood is also entitled to punitive damages.

80. Norwood is also entitled to a preliminary and permanent injunction enjoining any further misappropriation of his name, likeness or identity.

## FOR A THIRTEENTH CAUSE OF ACTION
### (Preliminary/Permanent Injunction as to
### Bronson, Dip Wizard and Coatings)

81.     Norwood repeats and realleges the allegations contained in the previous paragraphs consistent with this cause of action as if fully restated herein.

82.     Norwood alleges that Bronson has misappropriated the valuable trade secrets and other confidential information developed by Norwood for use in Dip Wizard, LLC's business. Norwood further alleges that Bronson is acting contrary to the interests of Dip Wizard, LLC and is assisting his son in the theft of the Company's property. Bronson's actions are ongoing and have caused or will cause irreparable harm to Norwood.  Norwood further alleges that Bronson and Coatings are infringing upon and misusing his copyrights.  Norwood further alleges that Bronson and Coatings are misappropriating his identity and infringing on his rights of publicity.

83.     Norwood is entitled to a preliminary and permanent injunction ordering Bronson and the Company to cease and desist from taking any further actions to disclose the Company's confidential or trade secret information, to cease and desist from allowing other companies to compete with the Company using the Company's property and assets, to cease and desist from taking any further actions on behalf of the Company, ordering that Norwood immediately be given access to and control over the Company, ordering Bronson and Coatings to cease and desist from any further use of Norwood's copyrights, and to cease and desist from any further misappropriation of Norwood's identity or infringement on his rights of publicity.

Wherefore, having fully complained of the defendants, the plaintiff, William Scott Norwood, prays for the following relief:

16

a.      For actual, consequential, incidental, special and general damages against defendants, jointly and severally, in amounts to be determined by the trier of fact;

b.      For punitive damaged against the defendants;

c.      For pre-judgment and post-judgment interest;

d.      For the cost of this action,

e.      For attorneys' fees;

f.      For an accounting to determine all amounts owed to Norwood pursuant to the Operating Agreement and South Carolina law;

g.      For a judicial order dissolving Dip Wizard, LLC,

h.      For disgorgement of all amounts belonging to Norwood,

i.      For the appointment of a receiver to be given full authority to marshal all of Dip Wizard, LLC's assets, to take title and possession of all such property, and to apply such property to satisfaction of any debt owed to Norwood.

j.      For a preliminary and permanent injunction, enjoining Bronson and Dipstick Coatings, LLC from continued misappropriation and misuse of Dip Wizard, LLC's assets, misappropriation and misuse of Dip Wizard, LLC's trade secrets, misappropriation and misuse of Norwood's distributional interest in Dip Wizard, LLC, misappropriation and misuse of Norwood's copyrights, from further management or other actions on behalf of Dip Wizard, LLC, from further infringement on Norwoods rights of publicity, and appointing a receiver to manage Dip Wizard, LLC until such time as the Court issues a final order in this manner.

k.      For a finding that a constructive trust exists between the defendants and Norwood and as such, that the defendants hold Norwood's property in trust until such time as this Court conducts an accounting to determine the proper amounts distributable to Norwood;

l.      An accounting for all gains, profits and advantages derived by Bronson and Coatings as a result of their infringement of Norwood's copyright, along with damages in an amount to be determined by the Court but not less than $500.

m.      And for such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Adam C. Bach
Adam C. Bach (Fed Id. No. 9877)
ELLER TONNSEN BACH, LLC
2201 Augusta St., Suite 200
Greenville, SC  29605
Telephone:  (864) 236-5013
Facsimile:   (864) 312-4191
*abach@etblawfirm.com*

February 4, 2015

Attorney for William Scott Norwood

Greenville, SC

The plaintiff demands a trial by jury as to all issues so triable:

/s/ Adam C. Bach

18